IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BERRY MELTON**                                                                                        **PETITIONER**

**V.**                                                    **CIVIL ACTION NO. 1:16CV397 HSO-LRA**

**STATE OF MISSISSIPPI**                                                            **RESPONDENT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Berry Melton was convicted in the Circuit Court of Harrison County, Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record, the undersigned recommends that his petition be dismissed with prejudice.

In March 2011, a jury convicted Melton of possession of a controlled substance with intent to distribute. He was sentenced as a habitual offender to 40 years imprisonment in the Mississippi Department of Corrections. The relevant facts are described in the state court's opinion as follows:

> On January 13, 2009, Officer Luis Garcia, with the Gulfport Police Department, stopped Melton's vehicle when he made a right-hand turn without using a turn signal. When Officer Garcia approached Melton's vehicle, he requested Melton's driver's license. Melton informed Officer Garcia that his driver's license had been suspended. Officer Garcia instructed Melton to exit his vehicle. After Melton exited his vehicle, Officer Garcia asked Melton if he had any weapons. Melton responded that he had a knife and reached toward his jacket pocket. Officer Garcia told Melton not to reach for the knife and ordered him to place his hands on the vehicle. Officer Garcia then removed Melton's knife and frisked him. He felt a bulge in Melton's left pocket, which turned out to be a black pouch. Officer Garcia removed the pouch, opened it, and found two glass pipes. After placing Melton under arrest, Officer Garcia called a tow truck to take Melton's vehicle to the police impound lot. At some point prior to the tow truck's arrival, Officer Tim Adams of the Gulfport Police Department arrived on the scene to conduct an inventory search of Melton's vehicle.

Officer Adams testified that the search was conducted according to the Gulfport Police Department's policy.

During the inventory search, Officer Adams discovered a black pouch on the floor next to the driver's seat. Officer Adams opened the pouch and found two clear tubes containing a white substance and three empty plastic "baggies." He approached Melton, who was by then secured in Officer Garcia's vehicle, read him his *Miranda* rights, and asked Melton to identify the white substance. Melton told Officer Adams that the white substance was methamphetamine. Melton was then taken to the Gulfport Police Department and booked for possession of a controlled substance.

At the police department, Sergeant Aaron Fore interviewed Melton. During the interview, Melton stated that he had made seven grams of methamphetamine that day. He said that he had sold approximately two grams, given some away, and used approximately .5 grams before Officer Garcia arrested him. Melton also confirmed that he told Officer Garcia that his driver's license had been suspended and that he did not use a turn signal because the signal light on the right side of his vehicle did not work. Additionally, Melton admitted that he had intentionally "stashed the dope" to keep both Officer Garcia and his companion from seeing it.

Dr. Thomas Pittman, who was the director of the drug-identification laboratory that weighed and tested the white substance found in Melton's vehicle, testified that the substance weighed 1.63 grams and was methamphetamine. Sergeant Fore testified that, based on his training and experience with narcotics cases, the amount of methamphetamine possessed for personal use would be less than .25 grams.

Prior to trial, Melton filed a motion to suppress all evidence stemming from the traffic stop, which the circuit court denied. Melton also filed a motion in limine requesting that the circuit court exclude "any and all evidence that may be presented as 404(b) evidence against him" and "any and all evidence regarding any uncharged criminal actions." The circuit court granted the motion. Nevertheless, during Sergeant Fore's testimony, the State introduced Melton's unredacted, audio-recorded police statement, where Melton suggested that he had committed other criminal acts.

*Melton v. State*, 118 So.3d 605, 607–08 (Miss. Ct. App., 2012).

Melton was convicted of possession with the intent to distribute a controlled substance. Aggrieved, he appealed and raised the following issues:

1. Whether the trial court erred in permitting the introduction of evidence representing direct fruits of two independent Fourth Amendment violations: An illegal, pre-textual traffic stop in which the officer alleged a violation of failure to use a turn signal, despite the officer's admission that there were no other cars on the road which eliminates the statutory requirement to use a turn signal and the warrantless search of appellant's vehicle and the containers therein.

2. Whether the trial court erred in failing to sustain the appellant's motion to set aside the jury's verdict (J.N.O.V.) because the evidence presented at trial was legally insufficient, or, in the alternative, refusing to grant the appellant's motion for a new trial, as the verdict of the jury was not supported by the overwhelming weight of the evidence.

3. Whether the trial court erred in failing to issue a *sua sponte* order for a mistrial in light of the state's obvious disregard for the trial court's previous ruling restricting 'prior bad acts' evidence, thereby violating appellant's due process right to a fundamentally fair trial, constituting plain error.[1]

The Mississippi Court of Appeals affirmed the conviction and sentence on October 9, 2012. *Melton*, 118 So.3d 605. Melton's subsequent *pro se* motion for post-conviction habeas relief was denied by the Harrison County Circuit Court on May 15, 2015. His sole ground for relief was the following ineffective-assistance-of-counsel claim (as stated by Petitioner):

. . . Defense counsel made fatal, highly prejudicial errors. First, by not objecting to the introduction of previously ruled inadmissible evidence of "prior bad acts." Second, by allowing this evidence to be published to defendants jury without first having it redacted of all "prior bad acts" not being the subject of this trial.[2]

---

[1] ECF No. 13-5, pp. 23-24.

[2] ECF No. 13-8.

3

Aggrieved, Melton appealed and the Mississippi Court of Appeals affirmed the trial court's decision on September 27, 2016. *Melton v. State*, 201 So.3d 1085 (Miss. Ct. App. 2016). However, Melton failed to petition the court for rehearing, forfeiting his right to seek further discretionary review. *See* M.R.A.P. 40(a) (providing that motion for rehearing must be filed within 14 days); *Roberts v. Cockrell*, 319 F.3d 690, 693 n.14 (5th Cir. 2003); M.R.A.P. 17(b) (providing that a petition for a writ of certiorari must be filed within 14 days of ruling on motion for rehearing).

Melton now brings the instant petition and essentially raises the same issues presented on direct appeal and post-conviction review (as stated by Petitioner):

1. Ineffective assistance of counsel. Defense counsel did not object to the admission of a recorded police interview, nor did she seek to have recording redacted of crucial "prior bad acts evidence" before allowing the State to play recording to jury. When such evidence had already been ruled inadmissible during this trial in a "motion in limine" filed by defense, confessed to by the State and sustained by the trial court judge.

2. Judgment notwithstanding the verdict. Any lay person can see that without the previously ruled inadmissible "prior bad acts evidence[,]" [t]here is no possible way to show or prove any intent of any kind because there was simply no intent nor anyone to intend to sell or distribute anything to. Nowhere in any testimony or in any of the police reports are there any mention of anyone that bought or received any contraband from defendant on day in question.

3. Trial court should have *sua sponte* ordered a new trial due to states [sic] disregard of "motion in limine" violation. Trial judge should have ordered a new trial when state blatantly disregarded courts [sic] previous ruling regarding evidence of prior bad acts.[3]

---

[3] ECF No. 1.

**Discussion**

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen,* 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

### 1.

In ground one, Melton asserts that counsel was ineffective for failing to object to his statement to law enforcement that he made, used, and sold methamphetamine on the day of his arrest. Although the Mississippi Court of Appeals considered this issue on state post-conviction review, Melton's failure to timely seek rehearing of the court's decision forecloses the claim from federal review.

A state prisoner seeking federal habeas relief "must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004). To fully exhaust in Mississippi, a party dissatisfied with the decision of the Mississippi Court of Appeals must first file a motion for rehearing with that court, then file a petition for writ of certiorari with the Mississippi Supreme Court, within 14 days of

6

a ruling on the motion for rehearing.  Miss. R. App. P. 17(b).  By failing to timely seek a rehearing in this case, Melton failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O' Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Any attempt to return to the state courts to complete the review process now would be futile.  The Mississippi Court of Appeals affirmed the denial of his post-conviction relief on September 27, 2016.  The time for filing a petition for rehearing or writ of certiorari with the Mississippi Supreme Court has long lapsed.  *See* Miss R. App. P. 17(b).  When "state remedies are rendered unavailable by Petitioner's own procedural default, federal courts are barred from reviewing those claims."  *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

This Court may nevertheless consider the merits of a procedurally defaulted claim if the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that "failure to consider the claim will result in a fundamental miscarriage of justice."  *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998); *Coleman v. Goodwin*, 833 F.3d 537, 540 (5th Cir. 2016).  To establish cause, "there must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  Melton does not identify any external impediment which prevented him from exhausting his ineffective assistance of counsel claim in this case.  Absent a showing of cause, this Court need not consider whether Petitioner suffered actual prejudice.  *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Melton also fails to demonstrate that failure to consider these claims on the merits will result in a fundamental miscarriage of justice. The miscarriage of justice exception is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation omitted). Actual innocence claims must be supported with new, reliable evidence that was not presented at trial and a petitioner must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 644. No such evidence has been presented here.

As Melton sets forth no basis to overcome the procedural default, his ineffective assistance of counsel claim should be dismissed with prejudice without review of the merits.

**2.**

In ground two, Melton challenges the sufficiency of the evidence supporting his conviction and the trial court's failure to grant his motion for judgment notwithstanding the verdict. He maintains that without the erroneous admission of "prior bad acts" described in his statement to law enforcement on the day of his arrest, the State had no evidence that he intended to sell the methamphetamine in his possession.

A sufficiency-of-the-evidence claim is based upon federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt. The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

8

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (internal quotation marks omitted). *Jackson* claims "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 2062. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency of the evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Viewing the evidence in the light most favorable to the State in this case, the Mississippi Court of Appeals concluded that the jury heard sufficient evidence from which it could rationally infer that Melton committed the statutory elements of the offense beyond a reasonable doubt. This finding was not objectively unreasonable.

Melton was convicted of violating Miss. Code Ann. § 41-29-139 (a)(1), which prohibits the sale of controlled substances. He does not deny that he was in possession of methamphetamine and related paraphernalia when he was arrested by police. His sole defense is that the amount of methamphetamine found in his possession was only for personal use, and absent evidence from someone who bought or received

9

methamphetamine from him that day, the evidence was insufficient to support his conviction.

Mississippi courts have long held that "[t]here is no magic number as to quantity with respect to evidence of intent to distribute." *Melton*, 118 So.3d at 610 (quotation omitted). The surrounding circumstances must be considered, including "evidence of prior involvement in the drug trade." *Id*. (quoting *Palmer v. State*, 969 So.3d 792, 795 (Miss. 2006)). While quantity alone is not always sufficient under state law, "[w]here the amount is greater than what one might ordinarily have for personal consumption, it does create an inference of intent to distribute." *Fox v. State*, 756 So.2d 753, 759 (Miss. 2000). As noted on direct appeal:

> [T]he State presented evidence that, at the time of his arrest, Melton possessed over six times the typical amount held for personal use. The amount alone created an inference of Melton's intent to distribute methamphetamine. Additionally, during the inventory search of Melton's car, police officers found baggies commonly used to package methamphetamine for sale.

*Melton*, 118 So.3d at 610. In addition to this evidence, Melton not only admitted in his police statement to selling methamphetamine earlier that day, but he "admitted that he was involved in the drug trade, even going so far as to classify himself as 'the best cook on the Coast.'" *Id*. His contention that these statements were the only evidence of the intent to distribute is without merit for the reasons stated. Officers testifying at trial explained that both methamphetamine and baggies "consistent with what methamphetamine is packaged and sold in" were found in his possession. The jury also

10

heard evidence that the amount in his Melton's possession was more than what is typically used for personal consumption.[4]

Viewing the evidence in the light most favorable to the prosecution, the state court's ruling that a rational jury could reasonably infer that Melton intended to sell methamphetamine was an objectively reasonable application of *Jackson*. Because Melton has presented nothing to overcome the deference afforded the state court's decision, no habeas relief is warranted on this claim.

**3.**

In ground three, Melton asserts that he is entitled to federal relief because the trial court allowed the admission of prejudicial evidence. Prior to trial, the court granted the defense's motion in *limine* to preclude evidence of prior bad acts pursuant to Rule 404(b)[5] of the Mississippi Rules of Evidence. Melton contends that his un-redacted police statement, in which he admits to making, using, and selling methamphetamine on the day of his arrest, was highly prejudicial "prior bad acts" evidence prohibited by the court's motion in *limine* ruling. Although couched as a failure to declare a mistrial on direct appeal, Melton argues that the trial court's failure to *sua sponte* order a new trial after his statement was introduced into evidence was error.

---

[4] ECF No. 13-2, p. 135.

[5] Mississippi Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

11

The Mississippi Court of Appeals rejected this argument on direct appeal, and the subsequent argument that counsel was ineffective for failing to object on this basis on post-conviction review. On this point, the court stated:

> . . . . Our supreme court has held that "proof of another act is allowed when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences." *Brown v. State*, 890 So.2d 901, 912 (Miss. 2004) (citing *Duplantis v. State*, 644 So.2d 1235, 1246 (Miss. 1994)). Melton was charged with possession of a controlled substance, methamphetamine, with intent to sell or distribute. His distribution of methamphetamine earlier that day would undoubtedly be a closely related transaction, which is likely why his attorney did not object. In any event, Melton offers no evidence to show how he was prejudiced from the admission of the unredacted statement.

*Melton*, 201 So.3d at 1087; s*ee also Brown*, 890 So.2d at 812 ("Proof of another crime or act is also admissible where necessary to identify the defendant, to prove motive, or to prove state of mind.").

For purposes of federal review, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citation omitted); *see also Edwards v. Butler,* 882 F.2d 160 (5th Cir. 1989). Because Melton claims, as he did on direct appeal, that he was deprived of a fundamentally fair right to trial in violation of his due process rights when the recorded statement was played for the jury, he states a cognizable claim. To merit habeas relief due to an admissibility error, Melton must show that the error resulted in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Fry v. Pliler*, 551 U.S. 112 (2007). There must be "more than a mere possibility that [the error] contributed to the verdict."

12

*Koon v. Cain*, 277 F. App'x 381, 386 (5th Cir. 2008) (quoting *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999)). "It must have had a substantial and injurious effect or influence in determining the verdict." *Id.* Only when the erroneous admission of prejudicial evidence is a "crucial, highly significant factor in the defendant's conviction," will it be deemed a due process violation. *Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007) (quoting *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998)).

Given the overwhelming evidence against Melton, this Court cannot conclude that the admission of his police statement had a substantial and injurious effect in determining the verdict. The jury heard evidence of Petitioner's guilt, independent of his admissions, that the amount of methamphetamine and paraphernalia in his possession reflected an intent to sell a controlled substance. Melton fails to establish that the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law. Nor has he shown it to be an unreasonable determination of the facts. Petitioner's claim on this basis should be denied.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice, and that a Final Judgment be entered accordingly.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either

serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on July 9, 2018.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE
